FILED ✓ LODGED
RECEIVED COPY

FEB 17 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY DEPUTY

MICHAEL BAILEY
United States Attorney
District of Arizona

MONICA B. KLAPPER
Assistant United States Attorney
Arizona State Bar No. 013755
Monica.Klapper@usdoj.gov

GARY M. RESTAINO
Assistant United States Attorney
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Monica.Klapper@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Eric J. Miller,<br>Defendant. | CR-21-00095-PHX-SPL<br><br>**PLEA AGREEMENT** |

The United States and Defendant Eric J. Miller agree to dispose of this matter on the following terms and conditions:

**1. PLEA**

Defendant will plead guilty to the information, which charges him with conspiracy (to commit securities fraud, wire fraud, money laundering, and aggravated identity theft), a class D felony, in violation of 18 U.S.C. § 371.

**2. MAXIMUM PENALTIES**

a. Pursuant to 18 U.S.C. § 371, conspiracy is punishable by 5 years in prison, a fine of either $250,000 or twice the gross pecuniary gain or loss, and a term of supervised

release of 3 years. The maximum term of probation is 5 years.

  b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order Defendant to:

    (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate.

    (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

    (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than 1 year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

    (4) pay upon conviction a $100 special assessment for each count to which Defendant pleads guilty pursuant to 18 U.S.C. § 3013.

  c. The Court is required to consider the Sentencing Guidelines in determining Defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction, unless there are stipulations to the contrary that the Court accepts.

**3. COOPERATION REQUIRED**

  a. If requested by the United States, Defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall: (i) waive the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic whatsoever; and (iii) provide full and complete information about the topics discussed in each interview, if necessary by volunteering information about which no questions are asked.

  b. If requested by the United States, Defendant shall deliver to the United States any documents and other items to which Defendant has access.

  c. If requested by the United States, Defendant shall testify at any time and place and, when testifying, shall not invoke the Fifth Amendment privilege against self-

incrimination.

d. All information, evidence, and testimony provided by Defendant pursuant to this Addendum shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. Defendant shall not attempt to either protect or falsely implicate any person or entity through false information or omission.

e. The United States Attorney's Office for the District of Arizona shall not use directly against Defendant in any criminal proceeding (other than a criminal forfeiture proceeding) any evidence provided by Defendant pursuant to this provision. Additionally, pursuant to section 1B1.8 of the Sentencing Guidelines, the Court shall not use such evidence in determining Defendant's advisory Sentencing Guidelines range. However, the United States may (i) make derivative use of evidence provided by Defendant pursuant to this Addendum, and (ii) use such evidence directly against Defendant in any criminal forfeiture proceeding and any administrative or civil proceeding.

f. Defendant shall work undercover only under the direct supervision of law enforcement officers and with the prior approval of the Court.

g. Defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

h. Defendant shall not violate any local, state, federal or foreign laws.

Additional Agreements Regarding Sentencing

i. At the request of the United States, Defendant shall request sentencing be deferred for a reasonable period. After such period, if the United States wishes for Defendant's cooperation to continue, Defendant shall not oppose any motions to continue Defendant's sentencing.

j. Prior to Defendant's sentencing, the United States shall in good faith consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose a sentence below the level established by law as the minimum sentence, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e).

    k. At sentencing and any other appropriate time, the United States shall bring the nature and extent of Defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons.

l. If Defendant fails to comply with any of Defendant's obligations or promises to set forth in the Plea Agreement or this Addendum, the United States may:

(1) in its sole and absolute discretion, declare any provision of the Plea Agreement and this Addendum null and void, without giving the defendant any right or option to withdraw from the Plea Agreement, this Addendum, or the plea of guilty;

(2) recommend any sentence, up to and including the statutory maximum sentence;

(3) prosecute Defendant, or reinstitute prosecution of Defendant, for any and all crimes committed by Defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

(4) use in any manner, and in any proceeding, any evidence provided by Defendant before or after execution of this Addendum; and

(5) advise the Bureau of Prisons that Defendant is no longer a cooperating witness, and recommend re-designation of Defendant to a higher custodial level.

m. If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or Defendant has failed to comply with this agreement, including whether Defendant has been truthful.

**4. AGREEMENTS REGARDING SENTENCING**

a. Stipulations. Defendant agrees to amend any tax returns for the tax years 2016 through 2019 to include the income earned while employed by Ira Gaines at Peachtree Partners, LLC.

b. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, Defendant specifically agrees to pay full restitution, regardless of the resulting loss amount, but in no event more than $1 million, to all victims directly or proximately harmed by Defendant's

"relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3. Defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw Defendant's guilty plea or to withdraw from this plea agreement.

c. Assets and Financial Responsibility. Defendant shall make a full accounting of all assets in which Defendant has any legal or equitable interest. Defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). Defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to Defendant in order to evaluate his ability to satisfy any financial obligation imposed by the Court. Defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of his supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, Defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

d. Acceptance of Responsibility. If Defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding his commission of the offense, and if he demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If Defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b). Defendant understands that recommendations are not binding on the Court. Defendant further understands that he will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

**5. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

The United States agrees that it will not proceed with any of the substantive charges in the complaint, including aggravated identity theft. This agreement does not in any manner restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**6. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give Defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If Defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute Defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, Defendant waives any and all objections, motions, and defenses based upon the statute of limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. Defendant understands that any statements made at the time of his change of plea or sentencing may be used against him in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**7. WAIVER OF DEFENSES AND APPEAL RIGHTS**

Defendant waives: (1) any and all motions, defenses, probable cause determinations, and objections that he could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against Defendant, or any aspect of Defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This

waiver shall result in the dismissal of any appeal, collateral attack, or other motion Defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**8.     DISCLOSURE OF INFORMATION**

a.     The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.     Any information, statements, documents, and evidence that Defendant provides to the United States pursuant to this agreement may be used against him at any time.

c.     Defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to criminal convictions, history of drug abuse, and mental illness, and financial information – including present financial assets or liabilities that relate to the ability of Defendant to pay a fine or restitution.

**9.     FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect Defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property Defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, that schedule shall be merely a schedule of minimum payments and shall not be

a limitation on the methods available to the United States to enforce the judgment.

**10. ELEMENTS**

**Conspiracy, 18 U.S.C. § 371**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit the crimes of securities fraud, wire fraud, money laundering, or aggravated identity theft;

2. Defendant became a member of the conspiracy knowing of at least one of its objects an intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy.

**Securities Fraud, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. Defendant or a coconspirator acted in connection with the purchase or sale of a security;

2. Defendant or a coconspirator knowingly and willfully employed a scheme or artifice to defraud, made untrue material statements or omitted a statement of material fact, and engaged in a practice that operated as a fraud;

3. Defendant or a coconspirator acted with the intent to defraud; and

4. Defendant or a coconspirator used, or caused to be used, a means or instrumentality of interstate commerce or the mail.

**Wire Fraud, 18 U.S.C. § 1343**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. Defendant or a coconspirator knowingly executed or attempted to execute a scheme or plan to defraud or for obtaining money or property by means of fraudulent pretenses, representations, promises, or omissions;

2. The statements made or facts omitted were material; that is, they had a natural tendency to influence or were capable of influencing, a person to part with money or property;

3. Defendant or a coconspirator acted with the intent to defraud; that is, the intent to deceive or cheat; and

4. Defendant or a coconspirator used, or caused to be used, the wires to carry out or attempt to further the scheme.

**Transactional Money Laundering, 18 U.S.C. § 1957**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. Defendant or a coconspirator knowingly engaged or attempted to engage in a monetary transaction;

2. Defendant or a coconspirator knew the transaction involved criminally derived property;

3. The property had a value greater than $10,000;

4. The property was in fact derived from wire fraud; and

5. The transaction occurred in the United States.

**Concealment Money Laundering, 18 U.S.C. § 1956**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. Defendant or a coconspirator conducted or intended to conduct a financial transaction involving property that represented the proceeds of wire fraud;

2. Defendant or a coconspirator knew the property represented the proceeds of wire fraud;

3. Defendant or a coconspirator knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of wire fraud; and

4. Defendant or a coconspirator did something that was a substantial step

toward committing the crime and that strongly corroborated the intent to commit the crime.

**Aggravated Identity Theft, 18 U.S.C. § 1028A**

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1. Defendant or a coconspirator knowingly transferred, possessed, or used, without legal authority, a means of identification of another person;

2. Defendant or a coconspirator knew that the means of identification belonged to a real person; and

3. Defendant or a coconspirator did so during and in relation to the commission of wire fraud.

**11. FACTUAL BASIS**

Defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

I was employed by Ira Gaines at Peachtree Partners, LLC, from about late 2016 to May of 2019 and again from about September 2019 to December 15, 2020. I was hired to assist Gaines in managing his microcap stock transactions, meaning that I assisted him in all aspects of buying and selling penny stocks privately or on the over-the-counter market. I had previously been employed at Scottsdale Capital Advisors, a local stock brokerage firm that specialized in penny stocks, where Gaines had been a customer. I was a licensed broker until approximately April of 2016.

I was paid an average of $100,000 a year by Gaines, for a total of about $270,000 over the time I worked for him. No taxes were withheld from my earnings, and I was not provided with a W-2 or a 1099. I filed tax returns for the relevant years, but I failed to include any income from Peachtree on those returns. Gaines employed a least four others at Peachtree, including Sue McCluskey and her daughter, S.M., and they were also paid "under the table." Over the years, I had multiple conversations with Gaines and McCluskey about this topic. Gaines consistently told us not to include any payments from

him on our tax returns or we would "ruin the good thing we have here." Gaines reminded me that I was effectively compensated at a much higher salary because I did not have taxes withheld.

Gaines routinely used "straw" owners (or nominees) to open accounts, hold shares of stock, and incorporate entities. This was done to conceal Gaines' identity as the true owner of various entities, bank accounts, shares of stock, and other financial instruments. Gaines was denied access to banks, brokerage firms, and clearing houses for several reasons, including that he failed to provide tax returns when requested and had a judgement issued against him by the Securities and Exchange Commission. Gaines also sought to avoid federal and state personal, business, and employment taxes, and sought to avoid "related party" status for purposes of meeting the requirements necessary to have "restricted" shares of stock deemed "unrestricted" so he could sell the stock publicly. I knew that concealing Gaines' identity was illegal.

When a Medallion signature guarantee was required, meaning that a financial institution needed to guarantee the authenticity of a signature, Gaines would use a banker at Banker's Trust to get a Medallion guarantee fraudulently, and then would himself sign the required name on the relevant document. Similarly, when proof of payment was necessary to clear stock, Gaines would transfer funds to the particular nominee and the nominee would then make the payment, so it appeared that the nominee, rather than Gaines, was providing the funds.

Regardless of the entity or individual used as a nominee, Gaines exercised ultimate control and authority over all financial and stock-related transactions, and all such transactions were reviewed and approved by him. I did not have access to Gaines' bank account or authority to engage in financial or stock transactions without Gaines' knowledge and approval.

In conjunction with engaging in transactions in a manner that concealed his ownership or control, Gaines arranged for restricted stock to be converted into unrestricted stock by appearing to not be a "related party" to the transaction under the relevant

regulations. I assisted Gaines and others with those transactions, knowing they were false and fraudulent. For example, Gaines paid R.S., a stock transfer agent, to simply remove the restrictive legend from GRNH stock certificates that Gaines controlled, without first meeting the requisite legal requirements and without generating any paperwork. Those shares were issued in the name of nominee P.P., to conceal Gaines' identity. Similarly, Gaines provided false information to attorney D.T. so D.T. would provide the requisite legal opinions for the removal of the restrictive legend from shares of LVVV stock and CURR stock.

In a similar way, Gaines also arranged for the promotion of stock prior to its sale, in an effort to increase either the value or the sales volume of the stock before he sold it. I assisted Gaines and others with these actions, knowing they were fraudulent. For example, Gaines directed payments to C.R. for promotional campaigns related to GRNH and ADMQ stock that Gaines controlled, so Gaines could sell the stock shares at a higher price.

Sue McCluskey is Gaines' long-time office manager and bookkeeper. Like me, she was paid "under the table," with no taxes withheld and no reporting to the IRS. She had her husband, T.M., serve as the nominee for Big Thunder, LLC, so Gaines could conduct transactions in the name of Big Thunder rather than his own name. I am aware that she signed documents in the names of nominees, as directed by Gaines.

David Rees is an attorney. He obtained millions of dollars in hard money loans from Gaines and, in return, assisted Gaines in recruiting and using international nominees M. N. and P.P. to engage in stock transactions that Gaines could not transact in his name or could not transact in the United States. Rees specifically instructed Gaines to use funds from the Big Thunder bank account for stock transactions so Gaines could conceal his identity.

Defendant shall swear under oath to the accuracy of this statement and, if Defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in his testimony may subject him to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

**APPROVAL AND ACCEPTANCE OF DEFENDANT**

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and

may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2/4/21
Date

Eric J. Miller
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised Defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with Defendant. No assurances, promises, or representations have been given to me or to Defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2/4/21
Date

Jay V. Surgent
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

MICHAEL BAILEY
United States Attorney
District of Arizona

MONICA KLAPPER Digitally signed by MONICA KLAPPER Date: 2021.02.08 16:06:31 -07'00'

_______________________ Date

MONICA B. KLAPPER
GARY M. RESTAINO
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

_______________________ Date

_______________________
Honorable
United States District Judge