\_\_ FILED      \_\_ LODGED
\_\_ RECEIVED    \_\_ COPY

FEB 1 7 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

1   MICHAEL BAILEY
    United States Attorney
2   District of Arizona

3   MONICA B. KLAPPER
    Assistant United States Attorney
4   Arizona State Bar No. 013755
    Monica.Klapper@usdoj.gov
5
    GARY M. RESTAINO
6   Assistant United States Attorney
    Arizona State Bar No. 017450
7   Gary.Restaino@usdoj.gov

8   Two Renaissance Square
    40 N. Central Ave., Suite 1800
9   Phoenix, Arizona 85004
    Telephone: 602-514-7500
10  Email: Monica.Klapper@usdoj.gov
    Attorneys for Plaintiff

\_/ FILED      \_\_ LODGED
\_\_ RECEIVED    \_\_ COPY

JUL 1 8 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

11

12              IN THE UNITED STATES DISTRICT COURT

13              FOR THE DISTRICT OF ARIZONA

14   United States of America,                CR-21-00095-PHX-SPL

15                    Plaintiff,

16         vs.                                **PLEA AGREEMENT**

17   Eric J. Miller,

18                    Defendant.

19

20        The United States and Defendant Eric J. Miller agree to dispose of this matter on

21   the following terms and conditions:

22   **1.    PLEA**

23        Defendant will plead guilty to the information, which charges him with conspiracy

24   (to commit securities fraud, wire fraud, money laundering, and aggravated identity theft),

25   a class D felony, in violation of 18 U.S.C. § 371.

26   **2.    MAXIMUM PENALTIES**

27        a.    Pursuant to 18 U.S.C. § 371, conspiracy is punishable by 5 years in prison, a

28   fine of either $250,000 or twice the gross pecuniary gain or loss, and a term of supervised



1  release of 3 years.  The maximum term of probation is 5 years.

2        b.     According to the Sentencing Guidelines issued pursuant to the Sentencing

3  Reform Act of 1984, the Court shall order Defendant to:

4             (1)     make restitution to any victim of the offense pursuant to 18 U.S.C.

5  § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate.

6             (2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a

7  fine is not appropriate;

8             (3)     serve a term of supervised release when required by statute or when a

9  sentence of imprisonment of more than 1 year is imposed (with the understanding that the

10  Court may impose a term of supervised release in all other cases); and

11             (4)     pay upon conviction a $100 special assessment for each count to

12  which Defendant pleads guilty pursuant to 18 U.S.C. § 3013.

13        c.     The Court is required to consider the Sentencing Guidelines in determining

14  Defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is

15  free to exercise its discretion to impose any reasonable sentence up to the maximum set by

16  statute for the crimes of conviction, unless there are stipulations to the contrary that the

17  Court accepts.

18  **3.**      **COOPERATION REQUIRED**

19        a.     If requested by the United States, Defendant shall meet with representatives

20  of the United States at any reasonable time and place and, in such meetings, shall:  (i) waive

21  the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked

22  about any topic whatsoever; and (iii) provide full and complete information about the topics

23  discussed in each interview, if necessary by volunteering information about which no

24  questions are asked.

25        b.     If requested by the United States, Defendant shall deliver to the United States

26  any documents and other items to which Defendant has access.

27        c.     If requested by the United States, Defendant shall testify at any time and

28  place and, when testifying, shall not invoke the Fifth Amendment privilege against self-

1    incrimination.

2         d.    All information, evidence, and testimony provided by Defendant pursuant to

3    this Addendum shall be truthful, honest, candid, and complete with no knowing and

4    material omissions or false statements.  Defendant shall not attempt to either protect or

5    falsely implicate any person or entity through false information or omission.

6         e.    The United States Attorney's Office for the District of Arizona shall not use

7    directly against Defendant in any criminal proceeding (other than a criminal forfeiture

8    proceeding) any evidence provided by Defendant pursuant to this provision.  Additionally,

9    pursuant to section 1B1.8 of the Sentencing Guidelines, the Court shall not use such

10   evidence in determining Defendant's advisory Sentencing Guidelines range.  However, the

11   United States may (i) make derivative use of evidence provided by Defendant pursuant to

12   this Addendum, and (ii) use such evidence directly against Defendant in any criminal

13   forfeiture proceeding and any administrative or civil proceeding.

14        f.    Defendant shall work undercover only under the direct supervision of law

15   enforcement officers and with the prior approval of the Court.

16        g.    Defendant shall notify the United States as soon as possible of any

17   interactions or contacts with any subject or target of any ongoing criminal investigation,

18   any criminal defendant, or their respective counsel or associates.

19        h.    Defendant shall not violate any local, state, federal or foreign laws.

20   Additional Agreements Regarding Sentencing

21        i.    At the request of the United States, Defendant shall request sentencing be

22   deferred for a reasonable period.  After such period, if the United States wishes for

23   Defendant's cooperation to continue, Defendant shall not oppose any motions to continue

24   Defendant's sentencing.

25        j.    Prior to Defendant's sentencing, the United States shall in good faith

26   consider moving the Court to depart downward from the Sentencing Guidelines, and if

27   applicable impose a sentence below the level established by law as the minimum sentence,

28   pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e).

- 3 -

k.    At sentencing and any other appropriate time, the United States shall bring the nature and extent of Defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons.

l.    If Defendant fails to comply with any of Defendant's obligations or promises to set forth in the Plea Agreement or this Addendum, the United States may:

(1)    in its sole and absolute discretion, declare any provision of the Plea Agreement and this Addendum null and void, without giving the defendant any right or option to withdraw from the Plea Agreement, this Addendum, or the plea of guilty;

(2)    recommend any sentence, up to and including the statutory maximum sentence;

(3)    prosecute Defendant, or reinstitute prosecution of Defendant, for any and all crimes committed by Defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

(4)    use in any manner, and in any proceeding, any evidence provided by Defendant before or after execution of this Addendum; and

(5)    advise the Bureau of Prisons that Defendant is no longer a cooperating witness, and recommend re-designation of Defendant to a higher custodial level.

m.    If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or Defendant has failed to comply with this agreement, including whether Defendant has been truthful.

**4.    AGREEMENTS REGARDING SENTENCING**

a.    <u>Stipulations.</u>  Defendant agrees to amend any tax returns for the tax years 2016 through 2019 to include the income earned while employed by Ira Gaines at Peachtree Partners, LLC.

b.    <u>Restitution.</u>  Pursuant to 18 U.S.C. § 3663 and/or 3663A, Defendant specifically agrees to pay full restitution, regardless of the resulting loss amount, but in no event more than $1 million, to all victims directly or proximately harmed by Defendant's

1  "relevant conduct," including conduct pertaining to any dismissed counts or uncharged

2  conduct, as defined by U.S.S.G. § 1B1.3.  Defendant understands that such restitution will

3  be included in the Court's Order of Judgment and that an unanticipated restitution amount

4  will not serve as grounds to withdraw Defendant's guilty plea or to withdraw from this plea

5  agreement.

6     c. Assets and Financial Responsibility.  Defendant shall make a full accounting

7  of all assets in which Defendant has any legal or equitable interest.  Defendant shall not

8  (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such

9  assets or property, without the prior approval of the United States (provided, however, that

10  no prior approval will be required for routine, day-to-day expenditures).  Defendant also

11  expressly authorizes the United States Attorney's Office to immediately obtain a credit

12  report as to Defendant in order to evaluate his ability to satisfy any financial obligation

13  imposed by the Court.  Defendant also shall make full disclosure of all current and

14  projected assets to the U.S. Probation Office immediately and prior to the termination of

15  his supervised release or probation, such disclosures to be shared with the U.S. Attorney's

16  Office, including the Financial Litigation Unit, for any purpose.  Finally, Defendant shall

17  participate in the Inmate Financial Responsibility Program to fulfill all financial obligations

18  due and owing under this agreement and the law.

19     d. Acceptance of Responsibility.  If Defendant makes full and complete

20  disclosure to the U.S. Probation Office of the circumstances surrounding his commission

21  of the offense, and if he demonstrates an acceptance of responsibility for this offense up to

22  and including the time of sentencing, the United States will recommend a two-level

23  reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. §

24  3E1.1(a).  If Defendant has an offense level of 16 or more, the United States will move the

25  Court for an additional one-level reduction in the applicable Sentencing Guidelines offense

26  level pursuant to U.S.S.G. § 3E1.1(b). Defendant understands that recommendations are

27  not binding on the Court.  Defendant further understands that he will not be permitted to

28  withdraw the guilty plea if the Court does not follow a recommendation.

**5.   AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

The United States agrees that it will not proceed with any of the substantive charges in the complaint, including aggravated identity theft.  This agreement does not in any manner restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**6.   COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give Defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If Defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute Defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, Defendant waives any and all objections, motions, and defenses based upon the statute of limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  Defendant understands that any statements made at the time of his change of plea or sentencing may be used against him in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**7.   WAIVER OF DEFENSES AND APPEAL RIGHTS**

Defendant waives: (1) any and all motions, defenses, probable cause determinations, and objections that he could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against Defendant, or any aspect of Defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c).  This

waiver shall result in the dismissal of any appeal, collateral attack, or other motion Defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.  This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**8.      DISCLOSURE OF INFORMATION**

a.      The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.      Any information, statements, documents, and evidence that Defendant provides to the United States pursuant to this agreement may be used against him at any time.

c.      Defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to criminal convictions, history of drug abuse, and mental illness, and financial information – including present financial assets or liabilities that relate to the ability of Defendant to pay a fine or restitution.

**9.      FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect Defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.  Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property Defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule).  If the Court imposes a schedule of payments, that schedule shall be merely a schedule of minimum payments and shall not be

1 a limitation on the methods available to the United States to enforce the judgment.

2 **10.    ELEMENTS**

3 ### Conspiracy, 18 U.S.C. § 371

4 Between about January 1, 2017 and December 17, 2020, in the District of Arizona
5 and elsewhere:

6 1.    There was an agreement between two or more persons to commit the crimes
7 of securities fraud, wire fraud, money laundering, or aggravated identity theft;

8 2.    Defendant became a member of the conspiracy knowing of at least one of its
9 objects an intending to help accomplish it; and

10 3.    One of the members of the conspiracy performed at least one overt act in
11 furtherance of the conspiracy.

12 ### Securities Fraud, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5

13 Between about January 1, 2017 and December 17, 2020, in the District of Arizona
14 and elsewhere:

15 1.    Defendant or a coconspirator acted in connection with the purchase or sale
16 of a security;

17 2.    Defendant or a coconspirator knowingly and willfully employed a scheme or
18 artifice to defraud, made untrue material statements or omitted a statement of material fact,
19 and engaged in a practice that operated as a fraud;

20 3.    Defendant or a coconspirator acted with the intent to defraud; and

21 4.    Defendant or a coconspirator used, or caused to be used, a means or
22 instrumentality of interstate commerce or the mail.

23 ### Wire Fraud, 18 U.S.C. § 1343

24 Between about January 1, 2017 and December 17, 2020, in the District of Arizona
25 and elsewhere:

26 1.    Defendant or a coconspirator knowingly executed or attempted to execute a
27 scheme or plan to defraud or for obtaining money or property by means of fraudulent
28 pretenses, representations, promises, or omissions;

2.     The statements made or facts omitted were material; that is, they had a natural tendency to influence or were capable of influencing, a person to part with money or property;

3.     Defendant or a coconspirator acted with the intent to defraud; that is, the intent to deceive or cheat; and

4.     Defendant or a coconspirator used, or caused to be used, the wires to carry out or attempt to further the scheme.

### Transactional Money Laundering, 18 U.S.C. § 1957

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1.     Defendant or a coconspirator knowingly engaged or attempted to engage in a monetary transaction;

2.     Defendant or a coconspirator knew the transaction involved criminally derived property;

3.     The property had a value greater than $10,000;

4.     The property was in fact derived from wire fraud; and

5.     The transaction occurred in the United States.

### Concealment Money Laundering, 18 U.S.C. § 1956

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

1.     Defendant or a coconspirator conducted or intended to conduct a financial transaction involving property that represented the proceeds of wire fraud;

2.     Defendant or a coconspirator knew the property represented the proceeds of wire fraud;

3.     Defendant or a coconspirator knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of wire fraud; and

4.     Defendant or a coconspirator did something that was a substantial step

1   toward committing the crime and that strongly corroborated the intent to commit the crime.

2   **Aggravated Identity Theft, 18 U.S.C. § 1028A**

3   Between about January 1, 2017 and December 17, 2020, in the District of Arizona

4   and elsewhere:

5   1.   Defendant or a coconspirator knowingly transferred, possessed, or used,

6   without legal authority, a means of identification of another person;

7   2.   Defendant or a coconspirator knew that the means of identification belonged

8   to a real person; and

9   3.   Defendant or a coconspirator did so during and in relation to the commission

10   of wire fraud.

11   **11.   FACTUAL BASIS**

12   Defendant admits that the following facts are true and that if this matter were to

13   proceed to trial the United States could prove the following facts beyond a reasonable

14   doubt:

15   I was employed by Ira Gaines at Peachtree Partners, LLC, from about late 2016 to

16   May of 2019 and again from about September 2019 to December 15, 2020.  I was hired to

17   assist Gaines in managing his microcap stock transactions, meaning that I assisted him in

18   all aspects of buying and selling penny stocks privately or on the over-the-counter market.

19   I had previously been employed at Scottsdale Capital Advisors, a local stock brokerage

20   firm that specialized in penny stocks, where Gaines had been a customer.  I was a licensed

21   broker until approximately April of 2016.

22   I was paid an average of $100,000 a year by Gaines, for a total of about $270,000

23   over the time I worked for him.  No taxes were withheld from my earnings, and I was not

24   provided with a W-2 or a 1099.  I filed tax returns for the relevant years, but I failed to

25   include any income from Peachtree on those returns.  Gaines employed a least four others

26   at Peachtree, including Sue McCluskey and her daughter, S.M., and they were also paid

27   "under the table."   Over the years, I had multiple conversations with Gaines and

28   McCluskey about this topic.  Gaines consistently told us not to include any payments from

1    him on our tax returns or we would "ruin the good thing we have here." Gaines reminded

2    me that I was effectively compensated at a much higher salary because I did not have taxes

3    withheld.

4         Gaines routinely used "straw" owners (or nominees) to open accounts, hold shares

5    of stock, and incorporate entities.  This was done to conceal Gaines' identity as the true

6    owner of various entities, bank accounts, shares of stock, and other financial instruments.

7    Gaines was denied access to banks, brokerage firms, and clearing houses for several

8    reasons, including that he failed to provide tax returns when requested and had a judgement

9    issued against him by the Securities and Exchange Commission.  Gaines also sought to

10   avoid federal and state personal, business, and employment taxes, and sought to avoid

11   "related party" status for purposes of meeting the requirements necessary to have

12   "restricted" shares of stock deemed "unrestricted" so he could sell the stock publicly.  I

13   knew that concealing Gaines' identity was illegal.

14        When a Medallion signature guarantee was required, meaning that a financial

15   institution needed to guarantee the authenticity of a signature,  Gaines would use a banker

16   at Banker's Trust to get a Medallion guarantee fraudulently, and then would himself sign

17   the required name on the relevant document.  Similarly, when proof of payment was

18   necessary to clear stock, Gaines would transfer funds to the particular nominee and the

19   nominee would then make the payment, so it appeared that the nominee, rather than Gaines,

20   was providing the funds.

21        Regardless of the entity or individual used as a nominee, Gaines exercised ultimate

22   control and authority over all financial and stock-related transactions, and all such

23   transactions were reviewed and approved by him.  I did not have access to Gaines' bank

24   account or authority to engage in financial or stock transactions without Gaines' knowledge

25   and approval.

26        In conjunction with engaging in transactions in a manner that concealed his

27   ownership or control, Gaines arranged for restricted stock to be converted into unrestricted

28   stock by appearing to not be a "related party" to the transaction under the relevant

1   regulations. I assisted Gaines and others with those transactions, knowing they were false
2   and fraudulent. For example, Gaines paid R.S., a stock transfer agent, to simply remove
3   the restrictive legend from GRNH stock certificates that Gaines controlled, without first
4   meeting the requisite legal requirements and without generating any paperwork. Those
5   shares were issued in the name of nominee P.P., to conceal Gaines' identity. Similarly,
6   Gaines provided false information to attorney D.T. so D.T. would provide the requisite
7   legal opinions for the removal of the restrictive legend from shares of LVVV stock and
8   CURR stock.

9          In a similar way, Gaines also arranged for the promotion of stock prior to its sale,
10  in an effort to increase either the value or the sales volume of the stock before he sold it. I
11  assisted Gaines and others with these actions, knowing they were fraudulent. For example,
12  Gaines directed payments to C.R. for promotional campaigns related to GRNH and ADMQ
13  stock that Gaines controlled, so Gaines could sell the stock shares at a higher price.

14         Sue McCluskey is Gaines' long-time office manager and bookkeeper. Like me, she
15  was paid "under the table," with no taxes withheld and no reporting to the IRS. She had
16  her husband, T.M., serve as the nominee for Big Thunder, LLC, so Gaines could conduct
17  transactions in the name of Big Thunder rather than his own name. I am aware that she
18  signed documents in the names of nominees, as directed by Gaines.

19         David Rees is an attorney. He obtained millions of dollars in hard money loans
20  from Gaines and, in return, assisted Gaines in recruiting and using international nominees
21  M. N. and P.P. to engage in stock transactions that Gaines could not transact in his name
22  or could not transact in the United States. Rees specifically instructed Gaines to use funds
23  from the Big Thunder bank account for stock transactions so Gaines could conceal his
24  identity.

25         Defendant shall swear under oath to the accuracy of this statement and, if Defendant
26  should be called upon to testify about this matter in the future, any intentional material
27  inconsistencies in his testimony may subject him to additional penalties for perjury or false
28  swearing, which may be enforced by the United States under this agreement.

1

**APPROVAL AND ACCEPTANCE OF DEFENDANT**

2      I have read the entire plea agreement with the assistance of my attorney.   I

3   understand each of its provisions and I voluntarily agree to it.

4      I have discussed the case and my constitutional and other rights with my attorney.

5   I understand that by entering my plea of guilty I shall waive my rights to plead not guilty,

6   to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to

7   present evidence in my defense, to remain silent and refuse to be a witness against myself

8   by asserting my privilege against self-incrimination, all with the assistance of counsel, and

9   to be presumed innocent until proven guilty beyond a reasonable doubt.

10      I agree to enter my guilty plea as indicated above on the terms and conditions set

11   forth in this agreement.

12      I have been advised by my attorney of the nature of the charges to which I am

13   entering my guilty plea.  I have further been advised by my attorney of the nature and range

14   of the possible sentence and that my ultimate sentence shall be determined by the Court

15   after consideration of the advisory Sentencing Guidelines.

16      My guilty plea is not the result of force, threats, assurances, or promises, other than

17   the promises contained in this agreement.  I voluntarily agree to the provisions of this

18   agreement and I agree to be bound according to its provisions.

19      I understand that if I am granted probation or placed on supervised release by the

20   Court, the terms and conditions of such probation/supervised release are subject to

21   modification at any time.  I further understand that if I violate any of the conditions of my

22   probation/supervised release, my probation/supervised release may be revoked and upon

23   such revocation, notwithstanding any other provision of this agreement, I may be required

24   to serve a term of imprisonment or my sentence otherwise may be altered.

25      This written plea agreement, and any written addenda filed as attachments to this

26   plea agreement, contain all the terms and conditions of the plea.   Any additional

27   agreements, if any such agreements exist, shall be recorded in a separate document and

28

- 13 -

may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2/4/21
Date

Eric J. Miller
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised Defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with Defendant. No assurances, promises, or representations have been given to me or to Defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

Date 2/4/21

Jay V. Surgent
Attorney for Defendant

-14-

1                **APPROVAL OF THE UNITED STATES**

2         I have reviewed this matter and the plea agreement.  I agree on behalf of the United

3 States that the terms and conditions set forth herein are appropriate and are in the best

4 interests of justice.

5                          MICHAEL BAILEY

6                          United States Attorney
                           District of Arizona

7

MONICA KLAPPER  Digitally signed by MONICA KLAPPER  Date: 2021.02.08 16:06:31 -07'00'

8 _____    _____
Date                       MONICA B. KLAPPER

9                       GARY M. RESTAINO
                      Assistant U.S. Attorneys

10

11              **ACCEPTANCE BY THE COURT**

12 7/19/2023

13 _____    _____
Date                      Honorable

14                      United States District Judge

- 15 -